There are two Fifth Amendment issues in this case. One issue is which opinion in Siebert controls and whether Miranda warnings mean anything when you first get a confession without giving warnings. Second, say, oh, yeah, you have these rights. And third, say, now, why don't you put what you just said in writing? The other issue is whether you can get a defendant to talk by telling him, quote, we can do this the easy way or the hard way, unquote. And, quote, we have enough to arrest you now and let the courts figure it out. Or you can talk to us and it might be better in the long run. We would submit, Your Honors, that neither of those passes muster under the Fifth Amendment. First, inserting Miranda warnings in the middle of this kind of continuous interrogation can't be sufficient. I don't think there's really any viable argument at all that it could be found sufficient under Justice Souter's plurality opinion in Siebert. So the question, I guess, comes down to whether it's that opinion or Justice Kennedy's concurring opinion that should set the standard. The Seventh Circuit and, just recently, the Fourth Circuit, an opinion I think it issued about a week and a half ago, say, should be Justice Kennedy's opinion. The Eighth Circuit and Judge Berzon, in her opinion, I believe it's the Presidio-Rodriguez case that I submitted a complaint, that's the only opinion to reach that issue. So there's one judge in this court addressing the issue. The only judge in this court that's addressed it is Judge Kennedy. We have the highest regard whether it's dissent or majority. But, of course, the majority controls if it says nothing different. Then we wouldn't be here. That's unrelevant. The Eighth Circuit and Judge Berzon say it should be Justice Souter's opinion, as do at least a couple of district courts and a I would submit, this court obviously has to decide that question. I submit there's at least two reasons this court should follow Judge Berzon and the Eighth Circuit and Justice Souter. First, it makes sense. Miranda warnings given in the middle, or in this case, really, near the very end of a continuous interrogation, really are almost meaningless. And the alternative intent-based test suggested by Justice Kennedy creates all sorts of problems that have led the Supreme Court to reject tests just like that in other contexts. First of all, in the Miranda context, the courts have generally focused on the effect on the defendant, not a subjective test, but the effect on a reasonable defendant. And that's what Justice Souter does, not the intent of the officers. Second, you create this subjective intent-based test. It has two effects. First of all, it's an extreme temptation to officers to either deliberately lie or to recreate the facts in their memories two or three months later. And second, it turns courts and attorneys into having to be mind readers. That's the whole reason we try to avoid tests like that. Counsel, we've got eight justices in that case that disagree with Justice Kennedy. Correct. And that's the second reason. That would be pretty powerful evidence. It seems that Justice Kennedy's opinion ought not to prevail. I think so. If that's the case and we toss Kennedy's opinion out, then what we really have is a 4-4 split. So why is there any opinion that we have to follow out of Missouri v. Siebert? Why don't we simply follow whatever our prior rule was in this circuit? Well, because Orso was expressly overruled. The prior rule is Orso. And Orso was expressly overruled. It's named and set forth as being overruled in Siebert. I don't think you can follow the dissent in Siebert, which would be the only other alternative. Because I think that would just be, it seems to me too discombobulating isn't the right word. But to follow the dissent in the Supreme Court opinion, it just seems to me, is not something you can do. I haven't seen any court in any circuit or state or anywhere that's even suggested that could be done. And I think the point, though, that Your Honor made about Justice Kennedy's point is precisely the reason here. And Judge Berzon, I think, articulates it very well, the reason you can't follow that. It's one, I think, one judge out of nine. She's charitable and says maybe two out of nine, depending on how you read Justice Breyer. Well, let's assume we follow the suitor, Justice Souter's approach. Why isn't, in this case, it harmless error in any event? It's not harmless error, Your Honor, for multiple reasons. Okay. First of all, Arizona v. Fulminante is, of course, the Supreme Court case that held it could possibly be harmless error in a confession case. But look at what Fulminante said as the caveat to that. I quoted at page 10, I believe, of my reply brief. It said, a confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. They come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. And the line that Fulminante itself drew, it distinguished between statements that might concern what they called isolated aspects of the case, or statements admitting facts that then combined with other facts could lead to a deductive argument of guilt. It distinguished between those and confessions, admissions of direct guilt. And this Court's cases, frankly, have distinguished between that. And I would submit the prosecutor saw that very distinction when he made his closing argument in this case. And how did he characterize the confession, and how did he use the confession in this case in front of the jury? He said that as his last and best point, he called it the heart of the case. He said that the confession is basically this whole case. And he argued that because logically, and if you look at the evidence, that is true. The confession was the most damning evidence in this case. And it was very harmful. And remember, the test isn't whether it's harmful or close. The test is whether they can show it's harmless beyond a reasonable doubt. And I submit the government cannot do that when in closing argument before the jury they called it the heart of the case. And when you look at it and say it's the heart of the case. I had Mr. Williams' testimony in front of that jury. And I had what at least I claimed were 13 reasonable doubts. I had something to argue. I had something to talk about. And up against that, I had to deal with this confession. And that was a major problem. It was not something I would submit that could even come close, Your Honor, to being called harmless. I think the Court, by the way, does need to also look at the voluntariness issue. And I certainly urge it to do that. Just the ring of the words, the easy way or the hard way, I would submit. We have and we will. All right. I'll save the rest of my time for rebuttal, Your Honor. Good. May it please the Court. Byung Soo Kim for the United States. I'd like to take up your question, Judge Fischer, first. And then turn to Judge Vibey's question about the meaning of Siebert and where we find ourselves today. With respect to your question, Your Honor, about the harmless error point, I would make several points. First of all, the Fulminante case involved a confession that was described as a full confession. That is, a confession that included details about how the offense was committed, the means by which it was committed, and the motives for committing it. As the defense counsel himself argued in his closing argument, the confession in this case and the fact that it wasn't the full confession that we saw in Fulminante was itself, the defense argued, a cause for reasonable doubt. I think he labeled that reasonable doubt number five. The second point, Your Honor, is that as the district court found, the district court who was present during the entire trial and heard all the evidence, the evidence was, even apart from the confession, quite overwhelming. And the evidence can be summarized in really just a couple sentences. The defendant applies for a passport. The passport clerk holds up his application with someone else's photograph on it. He says and affirms that everything on the application is true. He then signs his name directly underneath this photograph of someone else. And then that other person is the one who actually comes to pick up the finished passport. So even apart from the confession, when you just look at the evidence of the basic facts of this case, in addition, the district court's findings that the defendant, when he took the witness stand, admitted that he had lied in other parts of the application, and even about things about why he wanted a passport and about his height. What he did is that he listed a height that was in between his height and the height of the individual who eventually came to pick up the passport or tried to pick up the passport. So even apart from the confession, which the defense characterized as being a reasonable doubt and which wasn't full, there was overwhelming evidence of guilt. With respect to your question, Judge Bybee, about why we aren't in a situation where the Supreme Court has just split four on one side and four on the other, I would make several points. First of all, if you read the majority of the – excuse me – the plurality decision in the Siebert case, although Justice Souter articulates a set of factors that he would like courts to apply in applying the Siebert decision, what's clearly motivating the decision from the very first paragraph of the decision to the very last paragraph of the decision is the deliberateness of the police's two-step interrogation process in that case. What Justice Souter did was to try to craft a test that would address that core concern, a core concern running throughout and driving both the plurality decision and Justice Kennedy's concurring opinion. So I would argue that if you look at what was driving both of the decisions, it's clearly a concern with the deliberate withholding and circumvention of Miranda. I would argue further, Your Honor, that – How does one prove that? How does one establish that? Establish what, Your Honor? That it was deliberate. Well, Your Honor, contrary to what the defense counsel indicated, courts have not, outside the Fourth Amendment context, and this is a Fifth Amendment case, have not rejected subjective tests, tests that is that a focus on the intent of an individual. For example, in the Equal Protection Clause context, there's a requirement of intentional discrimination. In even the Fourth Amendment context, the Supreme Court has made clear that although it eschews tests that focus on the subjective intents of an individual law enforcement officer, the courts can nevertheless focus on programmatic purposes. And that's really what was at issue, Your Honor, in the Siebert case. The police, as the Supreme Court pointed out, were conducting this two-step interrogation process pursuant to a policy that encouraged such interrogation tactics. And then the court went on to describe how widespread this practice had become, and it was the offensiveness of that kind of deliberate attempt to circumvent Miranda that – So under Justice Kennedy's schema, if the next case that comes up follows essentially the same format of continuous, very measured and third-degree type of stuff, and then they get what they want to hear, and then they immediately convene into the Miranda warning, followed by the getting the confession, there's no policy. This is just the actions of this particular police officer. That's all the evidence that under – that one passes muster? Well, I – Because you can't prove that the officer – the officer stands up and says, no, no, I was just doing this because I wanted to make sure that I had the right guy sort of before I was going to hold him or anything else. And yet all of the objective behavior is identical. Yes, Your Honor. I think that based on the objective factors and the satisfaction of all of those objective factors, certainly an inference could be drawn by a judicial officer just as it is by juries in trials every day when they have to determine the intent of a defendant. They can't enter that defendant's mind, the Ninth Circuit's jury instructions remind us, and yet they can infer based on objective factors and circumstances what that intent was. But, Your Honor, regardless of whether there was a programmatic purpose that Justice Kennedy was trying to establish as being the linchpin of his test or whether he actually envisioned courts going into and trying to determine individual intent by specific police officers, there's no evidence in this record of either of those kinds of invidious and deliberate intent to circumvent the Miranda decision. Your Honor. Now, are you suggesting we should ignore Judge Bivey's point that eight, seven, by far a majority, rejected Justice Kennedy's approach as he stated it? Your Honor, our position is as follows, that as I tried to explain, the plurality decision is motivated by the exact same constraint as Justice Kennedy's. I have that all firmly in mind, but I don't know what I do with it. Well, Your Honor, what Justice Kennedy's, what Justice Souter's priority opinion goes on to say is to distinguish between the situation where there is a deliberate circumvention of Miranda on the one hand and the situation that he describes in Elstad where there's a good faith failure to Mirandize a defendant. And so that's more evidence, Your Honor, that at least where there is a good faith failure to Mirandize a defendant as existed in this case and as occurred here, that all of the members of the majority, regardless of whether you want to focus on the objective test or not, are on all fours. Now, Your Honor, even if the plurality decision by Justice Souter actually rejected Justice Kennedy's subjective test, this fact still remains, Your Honor, that the basic facts of Siebert involved a deliberate circumvention and what the general rule established in the Elstad case still applies, which is that absent a showing of involuntariness, a confession procured after a midstream Miranda warning is generally admissible. And what Justice Kennedy's decision adds to that is that there has to be an absence of deliberate attempts to circumvent Miranda as well. Finally, Your Honor, I realize I'm running out of time, but I did want to make very clear that even under Justice Souter's plurality decision, the government still prevails, and the reason is that the last factor of the Souter plurality decision is whether there's a continuity in questions between before the Miranda warnings are given and after. In this case, there are no questions given after the Miranda warnings at all. What happens, as established in the testimony of Agent O'Neill, is that the defendant asks the agents, what am I supposed to write? And the agents tell him very clearly, write whatever you want, whatever you want to share. They never say what he should write. They never try to correct what he's written. And they never try to retread the same ground, which is what occurred in the Sieber case. Every Federal Circuit court, Your Honor, that has considered this issue has required even if they haven't explicitly cited Justice Kennedy's decision, requires some showing of deliberateness. In only one of those cases, Your Honor, has a court of appeal actually affirmed the inadmissibility of a confession. And that was a case that did involve intentional withholding of Miranda warnings. Okay. Thank you, Your Honor. Thank you. The agents did tell him what to write. They said, quote, what you write is the same story as you give us, or gave us. Excerpt to Record 39. Or the other agent's recollection is that what Mr. Williams was told, just tell the truth. Don't say what you've told us, unquote. That's Excerpt to Record 110. They expressly incorporated the oral confession into what he should say in the written confession. I think that's about as direct continuity as you can get. I address all the factors of Justice Souter's test at page 26 of my opening brief and page 4 of my reply brief, and I'll just refer the court to that.  confessions and not have to do these case-by-case analysis. Perhaps the motivation underlying Justice Souter's opinion was this avoid Miranda idea, this deliberate evasion idea. But the way he did it was by creating an objective test. And he specifically says in footnote 6 of his opinion that the intent of the officer is not a consideration. Now, what his motivation was for establishing that test, we could go on about. But I think it was twofold. One was to not have to do these sort of fact-specific inquiries into the officer's head. Also, frankly, it was the effect on the person hearing the rights in the middle of a confession when he's already confessed. And then they go right into asking him, we'll say it again. On harmless error, Your Honor, you know, there's two ways of looking at this case. And I would submit if you look at, see the two ways of looking at it, you can't find harmless error here. The confession becomes important. Yeah, they talk about holding up the application here and saying, do you swear this is true? Well, yeah, if you're looking at the application, that's pretty powerful. But sometimes when people speak, they look at the person, when they're listening, they look at the person speaking to them, not at the thing they're holding up. You're three feet away from someone looking at them and what they held up, and you're looking at them instead of the thing being held up. You might not notice. And you wouldn't have a reason to look at the thing being held up if you thought it was fine. Sign something. Well, if you're bent over something and you're signing and you're signing here and there's a photograph right above it, if you're focusing on the signature line and you don't have any reason to look at the photograph, that photo is in your peripheral vision. You're not focusing on it that clearly. These are the kinds of arguments that I made that could be made. We had Mr. Williams saying he was going to London before this application was ever sent. That was very powerful, consistent evidence with what he said about he'd been asked to go to London and he thought he was getting a passport for himself. We had character evidence that was very powerful. We had his testimony under oath. Yes, those things could all be argued against, and yes, they could be argued and presented and contradicted the way the government sought to do in its closing argument. One of the most powerful pieces of contradiction was that they had this written confession that they could waive at the jury. It was the last thing the prosecutor talked about at the closing argument. It's what he described as the heart of his case. I don't think he can come in here and now tell Your Honors that it's not only not the heart of the case but harmless beyond a reasonable doubt. Okay, thank you. Thank both counsel. Very interesting case, and we will submit it. And we will stand in adjournment. You can go ahead. We're going to be taking some time to get out of here. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Could you grab some of these bench books for me? You can just bring that straight in. Thank you. Thank you.
judges: Browning, Fisher, Bybee